[Cite as *State v. Ross*, 2013-Ohio-1488.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF WAYNE | ) | |

STATE OF OHIO

    Appellee

v.

GARY A. ROSS

    Appellant

C.A. No.     12CA0008

APPEAL FROM JUDGMENT
ENTERED IN THE
WAYNE COUNTY MUNICIPAL COURT
COUNTY OF WAYNE, OHIO
CASE No.    TRC-11-05-03983

DECISION AND JOURNAL ENTRY

Dated: April 15, 2013

BELFANCE, Presiding Judge.

{¶1}    Defendant-Appellant Gary Ross appeals from the judgment of the Wayne County Municipal Court. For the reasons set forth below, we reverse.

I.

{¶2}    Mr. Ross was stopped by the State Highway Patrol on May 29, 2011, after Trooper Brandon Richardson believed he observed Mr. Ross commit a marked lanes violation. Ultimately, Mr. Ross was cited for driving under the influence in violation of R.C. 4511.19(A)(1)(a) and 4511.19(A)(2), crossing marked-lanes in violation of R.C. 4511.33, and failing to wear his seatbelt in violation of R.C. 4513.263(B)(1).

{¶3}    The driving-under-the-influence charges were dismissed, and the matter proceeded to a bench trial on the remaining charges. The trial court found Mr. Ross guilty of a marked-lanes violation and a seatbelt violation, fined him a total of $80, and ordered him to pay

court costs. Mr. Ross filed a motion for a delayed appeal, which this Court granted. He now raises a single assignment of error for our review.

II.

ASSIGNMENT OF ERROR

> DEFENDANT-APPELLANT'S CONVICTION FOR A MARKED LANES VIOLATION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

**{¶4}** Mr. Ross asserts in his sole assignment of error that his conviction for a marked-lanes violation is against the manifest weight of the evidence because (1) Trooper Richardson's testimony was not credible; (2) Mr. Ross' testimony was credible; and (3) the DVD of the traffic stop supported Mr. Ross' version of events.

**{¶5}** Nonetheless, a review of the weight of the evidence necessarily involves an evaluation of the sufficiency of the evidence in that, in order for this Court to weigh the evidence, there must be evidence to weigh. *See State v. Recklaw*, 9th Dist. No. 24078, 2008-Ohio-5444, ¶ 14; *State v. Anderson,* 9th Dist. No. 26006, 2012-Ohio-3663, ¶ 5; *State v. Eikleberry,* 184 Ohio App.3d 219, 2009-Ohio-3648, ¶ 15 (9th Dist.); *Estate of Harrold v. Collier,* 9th Dist. Nos. 07CA0074, 08CA0024, 2009-Ohio-2782, ¶ 15-16; *see also State v. Frum,* 9th Dist. No. 12CA0039, 2013-Ohio-1096, ¶ 4. As it is clear from the face of the record before us that Mr. Ross' conviction is based upon insufficient evidence, we conclude we are obligated to reverse it. We conclude that there was insufficient evidence to establish that, in moving either between lanes of traffic or completely out of a lane of traffic, Mr. Ross failed to ascertain the safety of such movement prior to making the movement. *See* R.C. 4511.33(A)(1). Accordingly, Mr. Ross' conviction is based upon insufficient evidence.

**{¶6}** In determining whether the evidence presented was sufficient to sustain a conviction, this Court reviews the evidence in a light most favorable to the prosecution. *State v. Jenks*, 61 Ohio St.3d 259, 274 (1991). Furthermore,

> [a]n appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*Id.* at paragraph two of the syllabus.

**{¶7}** R.C. 4511.33(A)(1) provides that

> [w]henever any roadway has been divided into two or more clearly marked lanes for traffic, or wherever within municipal corporations traffic is lawfully moving in two or more substantially continuous lines in the same direction, the following rules apply:
>
> (1) A vehicle or trackless trolley shall be driven, as nearly as is practicable, entirely within a single lane or line of traffic and shall not be moved from such lane or line until the driver has first ascertained that such movement can be made with safety.

**{¶8}** In *State v. Barner,* 9th Dist. No. 04CA0004-M, 2004-Ohio-5950, this Court determined that, "in order to sustain a conviction pursuant to R.C. 4511.33(A), the State must put forth evidence that the driver of a vehicle moving either between lanes of traffic or completely out of a lane of traffic failed to ascertain the safety of such movement prior to making the movement." *Id.* at ¶ 14. Other appellate districts are in accord with our analysis in *Barner. See State v. Hernandez*, 10th Dist. No. 09AP-765, 2010-Ohio-2066, ¶ 9 (listing cases from the Tenth and Eighth Districts with similar holdings). Further, the Ohio Supreme Court has not addressed the elements of the statute when determining the sufficiency of the evidence. *See Hernandez* at ¶ 15.

{¶9}    In 2008, the Ohio Supreme Court decided *State v. Mays,* 119 Ohio St.3d 406, 2008-Ohio-4539.  In *Mays*, the Supreme Court of Ohio examined whether it was constitutional for an officer to stop a motorist when an officer observed "a motorist cross a right white edge line [] without any further evidence of erratic driving or that the crossing was done in an unsafe manner * * * [.]"  (Internal quotations and citations omitted.)  *Id.* at ¶ 1.  In determining that the stop was constitutional, *see id.*, the Court discussed R.C. 4511.33.  *See id.* at ¶ 15-21.  The Supreme Court stated that "R.C. 4511.33 requires a driver to drive a vehicle entirely within a single lane of traffic.  When an officer observes a vehicle drifting back-and-forth across an edge line, the officer has a reasonable and articulable suspicion that the driver has violated R.C. 4511.33."  *Id.* at ¶ 16.  While *Barner* was decided prior to the Supreme Court's decision in *Mays*, we do not believe that *Mays* alters our holding in *Barner*, given *Mays'* focus on the constitutionality of the stop rather than analyzing the sufficiency of the evidence under R.C. 4511.33(A).  *See Hernandez*, 2010-Ohio-2066, at ¶ 15.

{¶10}    In *Mays,* "[t]he court noted that R.C. 4511.33 does allow for drivers to cross a lane line in certain circumstances without violating the statute.  The court, however, construed these circumstances as 'a possible defense' to the charge and, therefore, irrelevant to the reasonable and articulable suspicion analysis."  *Hernandez* at ¶ 12, quoting *Mays* at ¶ 17.  While it is possible to conclude that the Supreme Court intended "defense" to mean an affirmative defense requiring the defendant to carry the burden of proof on the issue, we do not think that such an interpretation is warranted.  *See Hernandez* at ¶ 13-18.  *But see State v. Rochowiak*, 2d Dist. No. 2008 CA 12, 2009-Ohio-2550, ¶ 51-56 (concluding that the issue of whether it is impracticable for a driver to stay in a marked lane and whether the driver first ascertained that movement from his lane could be made safely was an affirmative defense to a violation of R.C.

4511.33). We agree with the reasoning of the Tenth District in *Hernandez* and conclude that our decision in *Barner* is still valid. Notably, *Mays* was not examining the sufficiency or weight of the evidence, but was instead examining whether reasonable suspicion warranting a traffic stop had been established. *See Mays* at ¶ 1. Thus, *Mays* did not examine the elements necessary to commit a violation of R.C. 4511.33. Further, *Mays* does not refer to the language at issue in the statute as an affirmative defense; instead referring to it as a defense. *See Mays* at ¶ 17. As noted by our colleagues in the Tenth District, defense and affirmative defensive are not coextensive. *See Hernandez* at ¶ 14, 16. A defendant could assert that he or she did not violate the statute at all, which would be a defense, whereas an affirmative defense generally involves a justification or excuse for violating the statute. *See* R.C. 2901.05(D)(1) (defining an affirmative defense as "[a] defense involving an excuse or justification peculiarly within the knowledge of the accused, on which the accused can fairly be required to adduce supporting evidence[]"). Moreover, "[t]he impracticability and safety issues in the statute are not necessarily within the peculiar knowledge of a driver[] and, thus, outside the definition of an affirmative defense. *Hernandez* at ¶ 17.

{¶11} Accordingly, we continue to hold that, in order to establish a violation of R.C. 4511.33, the State must present evidence "that the driver of a vehicle moving either between lanes of traffic or completely out of a lane of traffic failed to ascertain the safety of such movement prior to making the movement." *Barner*, 2004-Ohio-5950, at ¶ 14. In the instant matter, the State failed to present any evidence of the foregoing.

{¶12} Trooper Richardson testified that, on May 29, 2011, at approximately 3:30 a.m., he was working on State Route 57 in Wayne County in a marked vehicle. He stated that he observed

> a Chevy pick-up truck pass[] [him] going South, just South of Church Road. As
> that vehicle passed [him], [he] look[ed] in [his] rearview mirror and it appeared

that it, [Mr. Ross'] vehicle was driving on the white fog line. So at Church Road [he] turned around in the roadway and caught up to the vehicle and the pick-up truck traveled outside of the marked white fog lines, by approximately a couple of feet. And at that point [he] initiated a traffic stop.

{¶13} When questioned, Trooper Richardson confirmed that he saw the vehicle travel over the fog line with both the front and rear tires on the passenger side. Trooper Richardson offered no testimony evidencing that Mr. Ross failed to ascertain the safety of such movement prior to making the movement. *See Barner* at ¶ 14.

{¶14} Mr. Ross also testified in his defense. He indicated that, on the early morning in question,

[he] drove from [his] home in Orrville to Rittman, picked [up a friend], drove him home to Clinton and then [] was proceeding home. At the time the officer pulled [him] over, [he] was coming southbound on State Route 57. As [he] passed Church Road, the tracks [were] a little bit rough there * * * so [he] was running a little bit to the right but [] was not outside the white line. And as [he] proceeded on further south, [he saw] headlights coming up fast behind [him.] * * * [A]t that time of night [he] was worried about * * * some drunk come flying up behind and hit[ting] [him]. [He] always worr[ies] about other vehicles [because he] drive[s] [a] truck for a living. So [he] moved slightly to the right but [he] was not over the white line.

Mr. Ross maintained that he did not cross the white line at any point.

{¶15} The DVD of the stop was also made part of the record. It depicts the Trooper's vehicle driving one direction, Mr. Ross' vehicle passing the Trooper's vehicle going the opposite way, and the Trooper's vehicle crossing railroad tracks, turning around, and pursuing Mr. Ross' vehicle at what appears to be a fairly high rate of speed. From the video, due to the time of day, the speed the Trooper's vehicle was traveling, and the Trooper's distance from Mr. Ross' vehicle for the majority of the pursuit, it is not possible to determine with any accuracy whether Mr. Ross' vehicle crosses the white fog line. In addition, the video does demonstrate that, at the time Mr. Ross may have crossed the fog line, no other cars were on the road. Thus, even when

viewing the video in a light most favorable to the State, it does not support the conclusion that Mr. Ross failed to ascertain the safety of leaving the lane prior to doing so.

{¶16} The dissent asserts that, because there was some evidence presented that Mr. Ross was tired when he was driving, there was evidence that he failed to ascertain the safety of the vehicle's movement out of the lane. It concludes that any driver who crosses a fog line solely because he is tired violates R.C. 4511.33.

{¶17} We do not agree. While it is possible that driving while tired can lead one to drive in an unsafe manner, it is equally probable that someone who is aware that he or she is tired will be more cautious in order to avoid the possibility of an accident. There was no evidence presented that Mr. Ross was so tired that he was falling asleep at the wheel or any observation by the Trooper that the vehicle appeared to jerk in and out of the lane, as might happen if someone had fallen asleep while driving. In light of all the other evidence, including the video, which does not even suggest that Mr. Ross failed to ascertain the safety of leaving the lane prior to doing so, we conclude that the State was required to inquire further in order to sustain its burden. Accordingly, we are not persuaded by the dissent's analysis.

{¶18} As the State failed to present evidence that Mr. Ross failed to ascertain the safety of his movement outside of the marked lane prior to making the movement, it failed to present sufficient evidence to support a finding of guilty based upon a violation of R.C. 4511.33. Mr. Ross' conviction is reversed.

III.

{¶19} In light of the foregoing, we reverse the judgment of the Wayne County Municipal Court, and the matter is remanded for the court to enter a judgment of acquittal on Mr. Ross' conviction for a marked-lanes violation.

Judgment reversed,
and cause remanded.

————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Wayne County Municipal Court, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

EVE V. BELFANCE
FOR THE COURT

CARR, J.
CONCURS IN JUDGMENT ONLY.

WHITMORE, J.
DISSENTING.

{¶20} I respectfully dissent. Based upon the record on appeal, I would conclude that Ross' conviction is not against the manifest weight of the evidence and affirm the judgment of the trial court.

**{¶21}** Initially, I would note that "weight of the evidence and sufficiency of the evidence are clearly different legal concepts." *State v. Thompkins*, 78 Ohio St.3d 380, 389 (1997). In constructing his argument on appeal, Ross chose to only present a weight challenge. Because he limited his argument to weight, one could infer that Ross chose to concede the sufficiency of the evidence and focus solely on seeking a reversal on the weight of the evidence. *See id.* at 388, quoting *Tibbs v. Florida*, 457 U.S. 31, 42-43 (1982) ("A reversal based on the weight of the evidence * ** can occur only after the State both has presented sufficient evidence to support conviction and has persuaded the jury to convict."). Nevertheless, I acknowledge that this Court has overturned a R.C. 4511.33(A) conviction on sufficiency grounds when presented solely with a manifest weight argument. *See State v. Barner*, 9th Dist. No. 04CA0004-M, 2004-Ohio-5950.

**{¶22}** Several years after this Court issued *Barner*, the Supreme Court issued *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539. While I agree that *Mays* concerned the validity of a traffic stop under R.C. 4511.33 rather than the sufficiency of a conviction under the same, *Mays'* discussion of the statute is instructive. Specifically, the Court agreed with the Seventh District's interpretation of R.C. 4511.33 and explained:

> "The legislature did not intend for a motorist to be punished when road debris or a parked vehicle makes it necessary to travel outside the lane. Nor, we are quite certain, did the legislature intend this statute to punish motorists for traveling outside their lane to avoid striking a child or animal. We are equally certain the legislature did not intend the statute to give motorists the *option* of staying within the lane at their choosing. Common sense dictates that the statute is designed to keep travelers, both in vehicles and pedestrians, safe. The logical conclusion is that *the legislature intended only special circumstances to be valid reasons to leave a lane, not mere inattentiveness or carelessness*. To believe that the statute was intended to allow motorists the option of when they will or will not abide by the lane requirement is simply not reasonable."

(Emphasis added.) *Mays* at ¶ 19, quoting *State v. Hodge*, 147 Ohio App.3d 550, 2002-Ohio-3053, ¶ 43 (7th Dist.). Having the foregoing explanation in mind, I would conclude that this case is distinguishable from *Barner*.

{¶23} In *Barner*, the officer simply testified that he witnessed Barner's truck cross the fog line three times and that he was the only motorist on the highway behind Barner when the lane violations occurred. *Barner* at ¶ 10. Barner then testified and provided an explanation for his behavior. He stated that, while he did not believe he ever crossed the fog line, he did drift to the right at several points during his drive to avoid potholes that could damage his truck and to determine whether the officer's cruiser was still behind him. *Id.* at ¶ 12-13. There was no testimony about the officer having spoken with Barner at the scene.

{¶24} Here, Trooper Richardson testified that he observed Ross commit lane violations when Ross' truck crossed over the fog line by several feet. He then executed a stop and spoke to Ross. Trooper Richardson testified that when he informed Ross that he had stopped him for a marked lane violation Ross "told me he was tired and he was leaving a friend's house and just trying to get home." When Ross testified, he offered a different explanation for his behavior. Ross stated that he was traveling on the right side of his lane to begin with because "[a]s I passed Church Road, the tracks are a little bit rough there." According to Ross, he then moved to the right again when he saw headlights coming up behind him because "at that time of night I was worried about * * * some drunk * * * flying up behind and hit[ting] me." Ross stated that he moved to the right "so that if [the other driver] tried to pass me as fast as he was coming up on me he would have more room to clear me."

{¶25} Ross' statement to Trooper Richardson at the scene was distinctly different than his testimony at trial. The only explanation Ross gave Trooper Richardson for his behavior was

that he was tired. I would equate tiredness to "mere inattentiveness or carelessness." *Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, at ¶ 19, quoting *Hodge*, 147 Ohio App.3d 550, 2002-Ohio-3053, at ¶ 43. Tiredness is not a "special circumstance[]" that would give rise to a "valid reason[] to leave a lane." *Mays* at ¶ 19, quoting *Hodge* at ¶ 43. Therefore, a driver who crosses a fog line solely because he is tired violates R.C. 4511.33.

{¶26} Ross did not tell Trooper Richardson that he drifted to the right because the road was rough or because he was concerned about a possible drunk driver. He only said he was tired and "just trying to get home." I do not believe it was Trooper Richardson's responsibility to press Ross for additional information once Ross gave him the foregoing explanation. Moreover, given Ross' explanation to Trooper Richardson, I do not believe the State was required to ask any specific questions about whether Ross ascertained the safety of his truck's movement before making the movement. *See* R.C. 4511.33(A)(1). If Ross' movement was due to his tiredness, then it was wholly divorced from any purposeful movement or thought process on his part. It was simply due to "inattentiveness or carelessness." *Mays* at ¶ 19, quoting *Hodge* at ¶ 43. I do not agree that the State failed to prove an element of its case. The State presented evidence that Ross crossed the fog line on the road and only did so because he was tired. Thus, the State presented sufficient evidence that Ross violated R.C. 4511.33(A)(1). The issue on appeal is strictly one of weight, not of sufficiency.

{¶27} The trial court here was presented with competing versions of the events. On the one hand, the court had Trooper Richardson's testimony that (1) he observed Ross commit lane violations and (2) Ross' explanation for his behavior was that he was tired and "just trying to get home." On the other hand, the court had Ross' testimony, in which he asserted that (1) he never crossed the fog line and (2) his behavior was due to the rough road and his concern over a

possible drunk driver. The trial court was in the best position to view the evidence and was free to believe Trooper Richardson's version of the events. *State v. Cross*, 9th Dist. No. 25487, 2011-Ohio-3250, ¶ 35, quoting *Prince v. Jordan*, 9th Dist. No. 04CA008423, 2004-Ohio-7184, ¶ 35. Ross' conviction is not against the manifest weight of the evidence. Thus, I would overrule his assignment of error and affirm the judgment of the trial court.

APPEARANCES:

BRIAN L. SUMMERS, Attorney at Law, for Appellant.

DANIEL R. LUTZ, Prosecuting Attorney, and NATHAN R. SHAKER, Assistant Prosecuting Attorney, for Appellee.