[Cite as *State v. Graham*, 2014-Ohio-3283.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

| STATE OF OHIO | C.A. No.     13CA010489 |
|---|---|
|     Appellant | |
|     v. | APPEAL FROM JUDGMENT |
| | ENTERED IN THE |
| SHANNON GRAHAM | COURT OF COMMON PLEAS |
| | COUNTY OF LORAIN, OHIO |
|     Appellee | CASE No.     12CR085358 |

DECISION AND JOURNAL ENTRY

Dated: July 28, 2014

HENSAL, Presiding Judge.

{¶1} Appellant, the State of Ohio, appeals from the judgment of the Lorain County Court of Common Pleas, granting Appellee, Shannon Graham's, motion to suppress. This Court reverses.

I.

{¶2} At approximately 2:00 a.m. on February 20, 2012, Trooper Charles Jackson was traveling southbound on Middle Avenue in Elyria. The streets were relatively deserted, but Trooper Jackson spotted a silver Oldsmobile traveling in front of him on the same road. He later identified Ms. Graham as the driver of the Oldsmobile. Trooper Jackson observed Ms. Graham make three turns before he decided to stop her car.

{¶3} First, Ms. Graham turned left from Middle Avenue onto Third Street, a one-way street. According to Trooper Jackson, he observed Ms. Graham commit a traffic violation when she turned onto Third Street because, rather than pull into the left-hand lane of Third Street when

she turned left, she immediately turned into its right, outside lane. Ms. Graham continued to drive down the right-hand lane until she reached the intersection of Third Street and East Avenue. Trooper Jackson followed behind her.

{¶4} Second, Ms. Graham turned right from Third Street onto East Avenue, a two-way street. According to Trooper Jackson, Ms. Graham committed another traffic violation when she turned right onto East Avenue because she executed a wide right-hand turn. That is, rather than pull into the right-hand lane of East Avenue when she turned right, Ms. Graham immediately turned into its left, inside lane. The left, inside lane became a turning lane for Fourth Street.

{¶5} Third, Ms. Graham turned left from East Avenue onto Fourth Street, a two-way street. Rather than pull into the left, inside lane of Fourth Street when she executed her left-hand turn, she immediately drove into its right, outside lane. Believing that he had observed Ms. Graham commit her third traffic violation in a brief span of time, Trooper Jackson stopped her car. He then approached her car and asked to see her license.

{¶6} Ms. Graham fumbled through her wallet and eventually informed Trooper Jackson that she did not have a driver's license because she was under suspension. According to Trooper Jackson, Ms. Graham had red, glassy eyes, smelled of alcohol, and swayed a bit when he asked her to exit her car. Trooper Jackson asked Ms. Graham to perform field sobriety tests and to blow into a portable breath testing device, but she refused the tests. Trooper Jackson then arrested Ms. Graham.

{¶7} A grand jury indicted Ms. Graham on charges of (1) operating a vehicle while under the influence of alcohol ("OVI"), in violation of R.C. 4511.19(A)(1)(a); (2) OVI, in violation of R.C. 4511.19(A)(2); and (3) driving under suspension, in violation of R.C. 4510.11(A). Ms. Graham filed a motion to suppress in which she argued that Trooper Jackson

lacked reasonable suspicion to stop her car and lacked probable cause to arrest her. The trial court held a hearing on the motion and later granted it. Specifically, the court determined that Trooper Jackson did not have reasonable suspicion to stop Ms. Graham and did not have probable cause to arrest her for OVI.

{¶8} The State now appeals from the trial court's judgment and raises one assignment of error for our review.

II.

ASSIGNMENT OF ERROR

THE TRIAL COURT ERRED IN GRANTING GRAHAM'S MOTION TO SUPPRESS BASED ON IMPROPER FACTUAL DETERMINATIONS AND MISAPPLICATION OF THE LAW TO THE FACTS OF THE CASE.

{¶9} In its sole assignment of error, the State argues that the trial court erred by granting Ms. Graham's motion to suppress. Specifically, it argues that Trooper Jackson had reasonable suspicion to stop Ms. Graham's car. We agree.

{¶10} The Ohio Supreme Court has held that:

[a]ppellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard.

(Citations omitted.) *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8.

{¶11} The Fourth Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment, prohibits unreasonable searches and seizures. *Accord* Ohio Constitution, Article I, Section 14. "A traffic stop constitutes a seizure within the meaning of the Fourth Amendment." *State v. Harper*, 9th Dist. Medina No. 12CA0076-M, 2014-Ohio-347, ¶ 9.

"However, an investigative stop of a motorist does not violate the Fourth Amendment if the officer has a reasonable suspicion that the individual is engaged in criminal activity." *State v. Campbell*, 9th Dist. Medina No. 05CA0032-M, 2005-Ohio-4361, ¶ 10. In evaluating the facts and inferences supporting the investigatory stop, a court must consider the totality of the circumstances as "viewed through the eyes of a reasonable and cautious police officer on the scene, guided by his experience and training." *State v. Bobo*, 37 Ohio St.3d 177, 179 (1988), quoting *United States v. Hall*, 525 F.2d 857, 859 (D.C.Cir.1976). "Where an officer has an articulable reasonable suspicion or probable cause to stop a motorist for any criminal violation, including a minor traffic violation, the stop is constitutionally valid * * *." (Emphasis omitted.) *Campbell* at ¶ 11, quoting *Dayton v. Erickson*, 76 Ohio St.3d 3, 11-12 (1996).

{¶12} R.C. 4511.36(A) provides that

[t]he driver of a vehicle intending to turn at an intersection shall be governed by the following rules:

(1) Approach for a right turn and a right turn shall be made as close as practicable to the right-hand curb or edge of the roadway.

(2) At any intersection where traffic is permitted to move in both directions on each roadway entering the intersection, an approach for a left turn shall be made in that portion of the right half of the roadway nearest the center line thereof and by passing to the right of such center line where it enters the intersection and after entering the intersection the left turn shall be made so as to leave the intersection to the right of the center line of the roadway being entered. Whenever practicable the left turn shall be made in that portion of the intersection to the left of the center of the intersection.

(3) At any intersection where traffic is restricted to one direction on one or more of the roadways, the driver of a vehicle intending to turn left at any such intersection shall approach the intersection in the extreme left-hand lane lawfully available to traffic moving in the direction of travel of such vehicle, and after entering the intersection the left turn shall be made so as to leave the intersection, as nearly as practicable, in the left-hand lane of the roadway being entered lawfully available to traffic moving in that lane.

Trooper Jackson testified that he observed Ms. Graham violate R.C. 4511.36(A) three times before he stopped her car.

{¶13} Trooper Jackson testified that, when he first spotted Ms. Graham's car, it was about 2:00 a.m. and there were not any other cars on the road. He estimated that he was a few hundred feet behind Ms. Graham when he saw her turn left from Middle Avenue onto Third Street, a one-way street. Trooper Jackson testified that he saw Ms. Graham pull directly into the right-hand lane of Third Street when she turned left. He indicated that he had an unobstructed view of Ms. Graham's car when she turned and that he did not observe any obstacles in the area that would have prevented her from pulling into the left-hand lane of Third Street when she turned. After seeing Ms. Graham commit an illegal turn, Trooper Jackson decided to follow her onto Third Street.

{¶14} Ms. Graham remained in the right-hand lane of Third Street and stopped at a red light at the intersection of Third Street and East Avenue, a two-way street with two northbound and two southbound lanes. Trooper Jackson testified that Ms. Graham turned right onto East Avenue and, when she did so, she pulled directly into its left, inside lane. Again, Trooper Jackson indicated that he did not observe any debris or obstacles in the area that would have prevented Ms. Graham from pulling into the right, outside lane of East Avenue when she turned. He testified that, at that point, his attention was fully drawn to Ms. Graham's car because he had observed her commit more than one illegal turn.

{¶15} At the intersection of East Avenue and Fourth Street, Ms. Graham turned left onto Fourth Street, a two-way street with two eastbound lanes and two westbound lanes. Trooper Jackson testified that Ms. Graham turned from the left turning lane of East Avenue into the right, outside lane of Fourth Street. Again, Trooper Jackson indicated that he did not observe any

debris or obstacles in the area that would have prevented Ms. Graham from pulling into the left, inside lane of Fourth Street when she turned left. Trooper Jackson testified that he stopped Ms. Graham after her third turn because he had observed her make three illegal turns within a short period of time.

{¶16} In addition to Trooper Jackson's testimony, the State introduced several Google maps of the streets at issue in this matter as well as a dashcam recording from Trooper Jackson's cruiser. The recording does not capture the first turn that Ms. Graham made onto Third Street. Instead, it begins as Trooper Jackson is completing the turn onto Third Street. One can then observe Ms. Graham's second turn onto East Avenue and her third turn onto Fourth Street. She executes both turns in the manner that Trooper Jackson described in his testimony.

{¶17} The trial court determined that Trooper Jackson lacked reasonable suspicion to stop Ms. Graham's car. For ease of analysis, we address the alleged traffic violations in reverse order. Accordingly, we begin with the left turn Ms. Graham made from East Avenue onto Fourth Street.

{¶18} The trial court found that East Avenue and Fourth Street are both two-way streets with two lanes on either side of their center lines. The court noted that Trooper Jackson's dashcam recording accurately reflected his testimony with regard to the turn Ms. Graham made from East Avenue onto Fourth Street. Consequently, the court found that Ms. Graham began a left-hand turn from the left turning lane of East Avenue and completed the turn by pulling into the right, outside lane of Fourth Street. Nevertheless, it determined that Ms. Graham's turn was proper, so it did not give rise to reasonable suspicion for a stop. As discussed below, both the trial court's interpretation of the statute and the legal conclusion it drew as a result of its erroneous interpretation were incorrect.

{¶19} Ms. Graham's left turn from East Avenue onto Fourth Street was governed by R.C. 4511.36(A)(2). Under that subsection

> an approach for a left turn shall be made in that portion of the right half of the roadway nearest the center line thereof and by passing to the right of such center line where it enters the intersection and after entering the intersection the left turn shall be made so as to leave the intersection to the right of the center line of the roadway being entered. *Whenever practicable the left turn shall be made in that portion of the intersection to the left of the center of the intersection.*

(Emphasis added.) R.C. 4511.36(A)(2). The trial court interpreted the italicized portion of the statute as requiring Ms. Graham to stay to the left on her approach into the intersection "so as to minimize her potential contact with travelers behind her * * * going southbound on East Avenue." Under the court's reading of the statute, Ms. Graham could pull into either the left- or right-hand lane of Fourth Street so long as her turn did not interfere with the movement of traffic *behind* her. Yet, R.C. 4511.36(A)(2) is also concerned with the movement of *head-on* traffic. A driver's left-hand turn into the outside lane of an intersecting street necessarily requires a longer and wider arc than does a left-hand turn into the inside lane of that same street. If a driver in the oncoming direction employs a similar approach in executing a left-hand turn, the paths of the two cars will cross and the two may collide. R.C. 4511.36(A)(2), therefore, requires drivers, whenever practicable, to pull into the left, inside lane when turning left from a two-way street onto another two-way street. The trial court's interpretation of the statute was incorrect, as was the legal conclusion it drew as a result of its improper interpretation.

{¶20} A traffic stop is constitutionally valid so long as an officer has reasonable suspicion to believe a motorist has violated a traffic law. *Campbell*, 2005-Ohio-4361, at ¶ 11, quoting *Erickson*, 76 Ohio St.3d at 11-12. Trooper Jackson observed Ms. Graham pull into the right, outside lane of Fourth Street when she turned left from East Avenue. He, therefore, had reasonable suspicion to believe Ms. Graham had violated R.C. 4511.36(A)(2).

{¶21} With regard to Ms. Graham's right turn from Third Street onto East Avenue, the trial court found that Third Street is a one-way street with a right turn lane and East Avenue is a two-way street with two lanes on either side of its center line. The court also found that the left, inside lane of East Avenue quickly becomes a left turning lane for Fourth Street. As with Ms. Graham's third turn, the court determined that Trooper Jackson's dashcam recording accurately reflected his testimony with regard to Ms. Graham's second turn. The court found that Ms. Graham made a right turn from the right turning lane of Third Street and completed the turn by pulling into the left, inside lane of Fourth Street rather than the curb lane. Nevertheless, the court determined that Ms. Graham's turn was proper under the circumstances.

{¶22} Ms. Graham's right turn from Third Street onto East Avenue was governed by R.C. 4511.36(A)(1). Under that subsection, an "[a]pproach for a right turn and a right turn shall be made as close as practicable to the right-hand curb or edge of the roadway." R.C. 4511.36(A)(1). The court concluded that it was "practicable under the circumstances," for Ms. Graham to pull into the left, inside lane of East Avenue when she turned right, given that she intended to turn left on Fourth Street. It, therefore, found that Trooper Jackson lacked reasonable suspicion to stop Ms. Graham as a result of her second turn.

{¶23} In *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, the Ohio Supreme Court considered whether an officer had reasonable suspicion to stop a motorist for a perceived violation of R.C. 4511.33, absent any further evidence of erratic or unsafe driving. R.C. 4511.33(A)(1) requires drivers traveling on two or more lane roads to drive, "as nearly as practicable, entirely within a single lane or line of traffic" and not to move from that lane or line "until the driver has first ascertained such movement can be made with safety." The officer in *Mays* executed a stop after twice seeing Mays' car drift over the white fog line. Mays argued

that reasonable suspicion for the stop did not exist because there was no evidence that "he had not stayed within his lane, 'as nearly as [was] practicable,' within the meaning of [the statute]." *Id.* at ¶ 17. The Supreme Court, however, rejected his argument. Casting the practicability language of the statute as a defense, the Court held that

> the question of whether appellant might have a possible defense to a charge of violating R.C. 4511.33 is irrelevant in our analysis of whether an officer has a reasonable and articulable suspicion to initiate a traffic stop. An officer is not required to determine whether someone who has been observed committing a crime might have a legal defense to the charge.
>
> * * *
>
> The phrase "as nearly as is practicable" does not give the driver the option to remain within the lane markings; rather, the phrase requires the driver to remain within the lane markings unless the driver cannot reasonably avoid straying.

*Id.* at ¶ 17-18. The Court held that, "[w]hen an officer observes a vehicle drifting back-and-forth across an edge line, the officer has a reasonable and articulable suspicion that the driver has violated R.C. 4511.33." *Id.* at ¶ 16.

{¶24} Much like the statute in *Mays*, R.C. 4511.36(A)(1) employs practicability language. *See* R.C. 4511.36(A)(1). The trial court found that it was practicable for Ms. Graham to execute a wide right-hand turn, so she did not violate the statute. The question, however, was not whether Ms. Graham had actually violated the statute. It was whether Trooper Jackson had reasonable suspicion to believe that a violation had occurred. *See, e.g., State v. Ross*, 9th Dist. Wayne No. 12CA0008, 2013-Ohio-1488, ¶ 9-10 (challenge to constitutionality of a traffic stop distinct from challenge to the sufficiency of the evidence underlying the resulting traffic citation). Trooper Jackson testified that Ms. Graham turned directly into the left, inside lane of East Avenue and that he did not observe any debris or other obstacles that might have prevented her from turning into its right, outside lane. His observations gave rise to reasonable suspicion that Ms. Graham had violated R.C. 4511.36(A)(1). *See Campbell*, 2005-Ohio-4361, at ¶ 12. He

was not required to consider whether Ms. Graham had a possible defense to the statute before stopping her car. *See Mays* at ¶ 17-21. *See also State v. Lewis*, 4th Dist. Scioto No. 08CA3226, 2008-Ohio-6691, ¶ 22-24 (*Mays* applied to R.C. 4511.36).

{¶25} With regard to Ms. Graham's left turn from Middle Avenue onto Third Street, the trial court made multiple factual findings. Many of those findings were premised upon the court's familiarity with the area, including the layout and proximity of the surrounding buildings, and an investigation that the court conducted after the suppression hearing. Specifically, the trial judge stated that he had driven the streets at issue and had used the odometer on his car to measure the distances Ms. Graham had traveled on each street. The court relied upon its own investigation and familiarity with the area, in conjunction with the dashcam recording, to conclude that Trooper Jackson would not have been able to see which lane Ms. Graham pulled into when she turned left onto Third Street. Consequently, the court held that Trooper Jackson lacked reasonable suspicion to stop Ms. Graham as a result of her left-hand turn onto Third Street.

{¶26} The State argues that the trial court erred when it relied upon facts not in evidence, under the guise of judicial notice, to reject Trooper Jackson's testimony about Ms. Graham's left turn onto Third Street. To resolve this appeal, however, we need not address Ms. Graham's turn from Middle Avenue onto Third Street. That is because, regardless of Ms. Graham's first turn onto Third Street, Trooper Jackson had reasonable suspicion to stop her car.

{¶27} As previously noted, a court must consider the totality of the circumstances when determining whether an officer had reasonable suspicion to perform an investigatory stop. *Bobo*, 37 Ohio St.3d at 179, quoting *Hall*, 525 F.2d at 859. Trooper Jackson testified that he had over 14 years of experience. At the time he observed Ms. Graham, it was around 2:00 a.m., and there

were not any other cars on the road. As Trooper Jackson was following directly behind Ms. Graham in his marked cruiser, he observed her make multiple turns, all of which are outlined above. Given that Ms. Graham pulled into improper lanes while executing at least two of those turns, Trooper Jackson could have reasonably concluded that she had violated R.C. 4511.36. Therefore, he had reasonable suspicion to stop her car. *See State v. Johnson*, 9th Dist. Medina No. 03CA0127-M, 2004-Ohio-3409, ¶ 11-15. The trial court erred by granting Ms. Graham's motion to suppress to the extent that the court found Trooper Jackson lacked reasonable suspicion to stop her car. The State's sole assignment of error is sustained on that basis.

{¶28} We note that the trial court granted Ms. Graham's motion to suppress on two separate bases. The court found unconstitutional both (1) the stop, and (2) the OVI arrest of Ms. Graham. The State, however, has only challenged the stop on appeal. In her brief, Ms. Graham noted that the court's judgment was two-fold and that the State's brief did not address the court's probable cause determination. The State failed to take any action in response. Accordingly, this Court's judgment pertains solely to the trial court's ruling with respect to the traffic stop. It does not address the trial court's probable cause determination, as the State has not challenged that portion of the court's judgment on appeal. Even so, the court's probable cause determination only pertained to the OVI counts. The court did not determine that Trooper Jackson lacked probable cause to arrest Ms. Graham for driving under suspension. The only impediment to that count was the court's determination that Trooper Jackson's initial stop of Ms. Graham's car was unconstitutional. Because we have reversed that determination, the State may proceed on the driving under suspension count on remand.

III.

{¶29} The State's sole assignment of error is sustained on the basis outlined above. The judgment of the Lorain County Court of Common Pleas is reversed, and the cause is remanded for further proceedings consistent with the foregoing opinion.

Judgment reversed,
and cause remanded.

————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

JENNIFER HENSAL
FOR THE COURT

CARR, J.
WHITMORE, J.
CONCUR.

APPEARANCES:

DENNIS P. WILL, Prosecuting Attorney, and MARY R. SLANCZKA, Assistant Prosecuting Attorney, for Appellant.

JACK BRADLEY, Attorney at Law, for Appellee.