2020 IL App (2d) 190626-U
No. 2-19-0626
Order filed August 10, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Lake County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 18-CF-1153 |
| LAMONT MCKENZIE, | ) ) ) | Honorable James K. Booras, |
| Defendant-Appellee. | ) | Judge, Presiding. |

JUSTICE JORGENSEN delivered the judgment of the court.
Justices Hutchinson and Hudson concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The trial court did not err in granting defendant's motion to suppress.  Affirmed.

¶ 2    On May 22, 2018, police officers from the North Chicago police department conducted a traffic stop and recovered a handgun from defendant's, Lamont McKenzie's, vehicle.  Defendant was subsequently charged with two counts of aggravated unlawful use of a weapon (720 ILCS 5/24-1.6(a)(1)(3)(C) (West 2016)), three counts of unlawful possession of a weapon by a felon (720 ILCS 5/24-1.6(a)(1)(3)(C) (West 2016)), and two counts of possession of a firearm without a firearm owner's identification card (720 ILCS 5/24-1.1(a) (West 2016)).  Defendant moved to

suppress evidence, arguing that the police lacked probable cause to effectuate the stop. The trial court agreed and denied the State's motion to reconsider. The State filed a certificate of impairment and now appeals. For the following reasons, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4       Defendant was arrested on May 22, 2018, after North Chicago police officers conducted a traffic stop of his vehicle and, following a search, recovered a handgun. On January 15, 2019, defendant filed an amended motion to suppress evidence, arguing that the recovered handgun and statements later elicited were illegally obtained. He noted that the officers claimed that they were conducting a "detail to interdict people and/or vehicles leaving the area, known as pre-contextual [*sic*] stops." The officers further claimed that, after following defendant's vehicle, he committed the offense of illegal lane usage, and, thus, the stop was justified. After stopping the vehicle, the officers observed an odor of cannabis in the vehicle, which then led to a search of the vehicle's interior, a strip search of defendant's person, and, then, a search of the entirety of the vehicle. A handgun was ultimately located in the engine-block area. Defendant argued that the searches were unreasonable, that the police lacked probable cause to believe that he committed an offense, and that they had exceeded the scope of their authority.

¶ 5       On May 21, 2019, a hearing was held on defendant's motion. The State read the following stipulated facts into evidence:

    "[O]n May 22, 2018, Donald Florance of the North Chicago Police Department, along with another officer, was sitting near Buckley Road just to the west of Highway 41. They were watching the parking lot of the hotel there. They were doing a drug interdiction because of the numerous complaints of drugs being used at that particular hotel. They saw

the defendant's car leave. They followed that car. They followed it eastbound on Buckley Road or otherwise Highway 137. They followed it eastbound to 41.

[Detective] Florance's testimony would be that [defendant] then made a left turn from Buckley Road to 41. So he went from eastbound Buckley Road to northbound 41. We have a stipulated exhibit for the court to look at here (tendering). Judge, it's an aerial photo of the intersection. As you can see, eastbound Buckley Road has four lanes and northbound 41 has two lanes.

The testimony would be that [defendant] properly got into the far[,] left lane to make a left-hand turn onto 41, which on those four lanes there is marked with a No. 1. [Defendant's] position was marked with an A there. And [defendant's] position—the course of his position according to [Detective] Florance's testimony would be going from that left lane, then to 41 to the *right* lane rather than the *left* lane [marked with a B on the exhibit].

Detective Florance would say that based on [defendant] going to that right lane rather than the left lane, they illuminated their traffic lights to—or Mars lights to effectuate a stop. During the course of that stop or when the stop was already in progress[,] they smelled some cannabis, saw something being thrown from the car, effectuated the stop, spoke with [defendant] and the other passengers in the car.

Also[,] factually speaking[,] [Detective] Florance would indicate that there was nothing impeding [defendant] or any other driver from entering the left bound—the left lane on northbound 41 coming out of that intersection and there would have been no obstruction, nothing impeding anybody's progress getting into the left lane rather than the right lane." (Emphases added.)

¶ 6     Defendant argued that the Fourth District's decision in *People v. Walker*, 2018 IL App (4th) 170877, which interpreted section 11-801(a)(2) of the Illinois Vehicle Code (Vehicle Code) (625 ILCS 5/11-801(a)(2) (West 2016)) and its provisions for left turns, was controlling. Defendant noted that the court in *Walker* had held that the statute did not require that a left turn be made into the far-most left lane available and, therefore, that suppression of evidence was warranted.  The court agreed and granted defendant's motion.

¶ 7     On June 12, 2019, the State moved the court to reconsider and, in the motion, included a summary of previously-stipulated facts, along with a few additional stipulations:

"a.      If called to testify, Donald Florance of the North Chicago Police Department would testify as follows: he is a sworn police officer for the North Chicago Police Department; he was on duty on May 22, 2018; at approximately 11:15 a.m.[,] they he [*sic*] and officer Ben Fapso were watching the parking lot of a hotel near the intersection of Highway 41 and Buckley Road; the purpose of their observation was drug interdiction due to complaints of drug use at the hotel; they observed and followed a car driven by the defendant; the defendant's car exited the hotel parking lot and proceeded eastbound on Buckley Road; the officers followed; the car then turned left onto northbound Highway 41 from eastbound Buckley; eastbound Buckley Road has for [*sic*] lanes at Highway 41—the leftmost being designated for left turns onto Highway 41; northbound Highway 41 north of Buckley Road consists of two lanes; in turning from Buckley to Highway 41, the defendant first entered the leftmost lane of eastbound Buckley; the defendant used his left turn signal; the defendant turned left; the defendant entered the intersection; the defendant then entered the right, rather than the left, lane of northbound Highway 41; no right turn signal had been used; there were no obstructions, impediments, traffic, or road conditions

prohibiting the defendant from entering the left lane; the officers then signaled for the defendant to pull over; *the officers were acting under their belief as to the meaning of 625 ILCS 5/11-801(a)(2)*; officers detected an odor of cannabis and saw a cigarette or cigarette like item being thrown from the car, but acknowledge that this occurred after the stop had been initiated; the defendant stopped the car[,] which resulted in a search[,] which resulted in the discovery of physical evidence of a crime as well as the making of verbal admissions by the defendant.

  b. If called to testify, the defendant would testify that he observed there to be a police car behind him on Buckley road at Highway 41, and that when he turned left, he went into the right lane, so the police car could go by him." (Emphasis added.)

¶ 8 Given those facts, the State argued, the court should reconsider its suppression ruling. The State argued that *Walker*'s interpretation of section 11-801(a)(2) was erroneous and rendered superfluous the statute's requirement that, "whenever practicable[,] the left turn shall be made in that portion of the intersection to the left of the center of the intersection." Further, the State argued that, as to defendant's position that he was moving out of the officers' way, the police car had not signaled to defendant at that point and, in any event, that a driver's desire to "yield" to a car behind him does not make entering the left lane any more or any less practicable.

¶ 9 On June 12, 2019, after a hearing, the court denied the State's motion to reconsider. It noted that it was bound to follow *Walker* and, moreover, that it agreed with the analysis. The court disagreed with the State's interpretation of the statute, noting that the allegedly-superfluous sentence concerned action that should be taken only "when practicable," which has broad definition.

¶ 10     That same day, the State filed a certificate of impairment. On July 11, 2019, it filed a notice of appeal. We have jurisdiction pursuant to Illinois Supreme Court Rule 604(a)(1) (eff. July 1, 2017).

¶ 11                                             II. ANALYSIS

¶ 12     The State argues first that section 11-801(a)(2) of the Vehicle Code unambiguously required defendant to turn into the leftmost available lane. Next, the State argues that officer Florance had an objectively-reasonable belief that defendant had committed a traffic violation. Finally, the State argues that this case requires application of the good-faith exception to the exclusionary rule.

¶ 13     When reviewing a circuit court's ruling on a motion to suppress evidence, we apply a two-part standard of review. *People v. Timmsen*, 2016 IL 118181, ¶ 11. First, we uphold the circuit court's factual findings unless they are contrary to the manifest weight of the evidence. *Id*. Second, we review *de novo* the circuit court's ultimate legal conclusion as to whether suppression is warranted. *Id*. Here, the facts are not in dispute, so our review is simply *de novo*.

¶ 14     The fourth amendment to the United States Constitution (U.S. Const., amend. IV) and article I, section 6, of the Illinois Constitution (Ill. Const. 1970, art. I, § 6) protect individuals from unreasonable searches and seizures. *Id. ¶ 9*. When police stop a vehicle, thereby detaining its occupants, they effectuate a seizure within the meaning of the fourth amendment. *Id.* Vehicle stops are, therefore, analyzed pursuant to the principles established in *Terry v. Ohio*, 392 U.S. 1, 19 (1968), such that the officer's seizure must be based on a "reasonable, articulable suspicion" that the person "has committed, or is about to commit, a crime." See *Timmsen*, 2016 IL 118181, ¶ 9. "The investigatory stop must be justified at its inception[,] and the officer must be able to point to specific and articulable facts which, taken together with rational inferences from those

facts, reasonably warrant the governmental intrusion upon the constitutionally protected interests of the private citizen." *Id.* To assess the vehicle stop's validity, we consider the totality of the circumstances, and we objectively consider whether the facts at the time of the seizure would warrant a reasonably-cautious officer to believe that the seizure was appropriate. *Id.* "If reasonable suspicion is lacking, the traffic stop is unconstitutional and evidence obtained as a result of the stop is generally inadmissible." *People v. Gaytan*, 2015 IL 116223, ¶ 20. An officer may justifiably stop a vehicle based on the observation of a traffic violation. *People v. Sorenson*, 196 Ill. 2d 425, 433 (2001).

¶ 15                                    A. Section 11-801(a)(2)

¶ 16    We address first the State's argument that the Vehicle Code is unambiguous, such that defendant's turn left turn violated the statute and the vehicle stop was valid. A court's primary objective in construing a statute "is to give effect to the legislature's intent, presuming the legislature did not intend to create absurd, inconvenient or unjust results." *Gaytan*, 2015 IL 116223, ¶ 23. The best indicator of legislative intent is the statutory language itself, giving it its plain and ordinary meaning. *Id.* When possible, a court must give effect to every word, clause, and sentence, and may not "read a statute so as to render any part inoperative, superfluous, or insignificant; [moreover, the court] must not depart from the statute's plain language by reading into it exceptions, limitations, or conditions the legislature did not express." *People v. Ellis*, 199 Ill. 2d 28, 39 (2002). The construction of a statute presents a question of law, which we review *de novo*. *Gaytan*, 2015 IL 116223, ¶ 23.

¶ 17    Section 11-801(a)(2) of the Vehicle Code provides:

"Required position and method of turning. (a) The driver of a vehicle intending to turn at an intersection shall do so as follows:

\*\*\*

> (2) The driver of a vehicle intending to turn left at any intersection shall approach the intersection in the extreme left-hand lane lawfully available to traffic moving in the direction of travel of such vehicle, and after entering the intersection, the left turn shall be made so as to *leave the intersection in a lane lawfully available to traffic moving in such direction upon the roadway being entered*. Whenever practicable the left turn shall be made in that portion of the intersection to the left of the center of the intersection." (Emphasis added.) 625 ILCS 5/11-801(a)(2) (West 2016).

¶ 18    The State contends that the first sentence requires the driver to turn in the correct direction, while the second sentence governs how the turn should be made, *i.e.*, that, if practicable, the turning vehicle must stay to the left of the center of the intersection. The State contends that the court wrongly relied on *Walker*'s interpretation which, it argues, ignored sentence two and rendered it superfluous. The State asserts that, if a motorist makes a left turn into the farthest right lane of two available lanes, the vehicle will necessarily pass through the center of the intersection in contravention of the statute's second sentence. In addition, the State asserts that interpreting the statute as allowing a left turn in a manner that requires a lane change is to divorce such an interpretation from real-world concerns; namely, traffic safety and the dangerous decision to change lanes in the middle of an intersection. This is particularly an issue, it continues, when an intersection features two left-turn lanes, would encourage driving across the dotted-line between those lanes, could block and interfere with traffic trying to turn right onto the same roadway, and, further, contravenes two other Vehicle Code provisions requiring a driver to change lanes only after ascertaining that the movement can be made safely and after using a turn signal. See 625 ILCS 5/11-709(a), 11-804(d) (West 2016). The State contends that the legislature could not have

intended such an absurd result. Finally, the State argues that Officer Florance's interpretation of the section 11-801(a)(2) is supported by precedent in foreign jurisdictions, where similar statutes have been interpreted as requiring that the driver, when completing the left turn, enter the leftmost lane. See, *e.g.*, *State v. Steen*, 2004 MT 343, ¶¶ 8-9; *State v. Graham*, 2014 Ohio 3283, ¶ 19. For the following reasons, we disagree.

¶ 19    Many of the arguments the State raises were rejected in *Walker*, which faced similar facts. Namely, a traffic stop was initiated after the defendant turned left and proceeded into the right lane, as opposed to the leftmost lane of the roadway being entered. The officer testified that he pulled over the defendant for making a wide left turn and that his understanding of the statute was that, where there are two lanes, the driver should stay in the "nearest" lane; he believed that the procedure was required by law, as opposed to being simply best practice. The reviewing court affirmed the trial court's decision to exclude the evidence arising out of the traffic stop. *Walker*, 2018 IL App (4th) 170977, ¶ 26. According to the court, the statute was unambiguous and allowed the defendant to exit the intersection by turning into *either* of the available lanes. *Id.* ¶ 18. The court explained that sentence one in section 11-801(a)(2) had two components, directing: (1) what lane the driver must be in when *approaching* the intersection (the extreme left-hand lane), and what lane the driver should use when *exiting* the intersection ("a lane lawfully available to traffic moving in such direction upon the roadway being entered"). Sentence two, in contrast, concerns what the drivers should do *within* the intersection. *Id.* ¶ 17. As such, the court rejected the State's argument that the second sentence was rendered superfluous by its interpretation. Further, the court held:

> "For this court to agree with the State's interpretation of this subsection, we would
>
> have to depart from the plain language of the statute by reading into the statute exceptions,

limitations, or conditions the legislature did not express, and we would have to deem other parts of the statute superfluous. This court would have to determine the legislature intended (1) for the last sentence of subsection (a)(2) to be read to restrict what lane a driver could exit an intersection—without any language in the sentence to that effect—and (2) for language in the first sentence 'the left turn should be made so as to leave the intersection *in a lane lawfully available to traffic moving in such direction*' [      ]—to be ignored." (Emphasis in original.) *Id.* ¶ 18.

Finally, the court rejected as "easily distinguishable" the same Montana and Ohio cases that the State cites here, noting that the statutes in those cases were not written as clearly as section 11-801(a)(2), which instead includes language specifically allowing the driver to leave the intersection in any lane available to traffic moving in the desired direction. *Id.* ¶ 19.

¶ 20 The State is correct that *Walker* is not binding on this court. See *People v. Burns*, 2016 IL 118973, ¶ 66. Nevertheless, we have no issues with its interpretation of section 11-801(a)(2). We agree that the statute is unambiguous: sentence one explicitly allows the driver to turn left and "leave" the intersection "in a lane lawfully available to traffic moving in such direction." Here, defendant turned left into a lane lawfully available to traffic moving in the intended direction. Moreover, this interpretation does not render superfluous section 11-801(a)(2)'s second sentence, because that sentence concerns where *in the intersection* the turn should, if practicable, be *made*, *i.e.*, "in that portion of the intersection to the left of the center of the intersection." 625 ILCS 5/11-801(a)(2) (West 2016).

¶ 21 We also agree that the statutes at issue in *Steen* and *Graham*, which contained identical language, are distinguishable. The relevant portion of those statutes provides that, "after entering the intersection, the left turn shall be made so as to leave the intersection to the right of the center

line of the roadway being entered. Whenever practicable the left turn shall be *made in that portion of the intersection to the left of the center* of the intersection." (Emphasis added.) See *Steen*, 2004 MT 343, ¶ 8; *Graham*, 2014 Ohio 3283, ¶ 12. Although those courts interpreted their statutes as requiring the motorist, when practicable, to enter the leftmost lane available upon completion of the turn, those statutes did not *specify*, as does section 11-801(a)(2), that the motorist may leave the intersection in *any* lane lawfully available to traffic moving in the intended direction. Moreover, we note that at least one Ohio appellate court has found *Graham* unpersuasive and has declined to follow it; although agreeing that the statute's language is plain and unambiguous, the court held that it does *not* prohibit a driver from turning into the outside, right lane, instead of the inside, left lane. See, *e.g.*, *State v. Kirkpatrick*, 2017 Ohio 7629, ¶ 13 (ultimately concluding, however, that, due to the conflicting interpretations within the caselaw, the officer's belief that the wide left turn had violated the statute was an objectively-reasonable mistake of law and affirming denial of the motion to suppress).

¶ 22    The State's safety concerns here are noted, but do not necessarily render the plain language of section 11-801(a)(2) ambiguous or absurd. The statute does not change a driver's duty to yield, safely change lanes, or use a turn signal, and the evidence here does not concern any of those issues. Although defendant did not use a turn signal before entering the far right lane, the officer here stopped defendant only for entering the right lane after performing a left turn, which is not prohibited by the statute.

¶ 23        B. Officer's Objectively-Reasonable Belief and the Good-Faith Exception

¶ 24    The State raises two alternative arguments. First, it asserts that, even if we disagree with its interpretation of the statute, the traffic stop was justified, because it resulted from Officer Florance's objectively-reasonable belief, based on his understanding of the statute, that a traffic

law had been violated. Further, it notes, *Walker* had not yet been decided at the time of the stop and, therefore, there was no contrary appellate precedent to rebut his understanding of the statute. The State contends that an officer may have an objectively-reasonable basis to find a traffic violation where the statute is "ambiguous" and no appellate court had addressed its scope at the time of the stop. It argues that an investigatory stop may be justified to determine the reason for a driver's lane deviation and, citing *Gayton* and *Heien v. North Carolina*, 574 U.S. 54, 66-68 (2014), argues that a reasonable mistake of law may suffice to satisfy reasonable suspicion.

¶ 25    The State's second alternative argument is that, if we conclude that the vehicle stop was not justified, we should apply the good-faith exception to the exclusionary rule. It notes that exclusion of evidence is not a constitutional right but, rather, is to be used as a "last resort" and in "unusual cases" where its use might deter future fourth amendment breaches. See *Unites States v. Leon*, 468 U.S. 897, 906 (1984); *People v. Manzo*, 2018 IL 122761, ¶ 69. The State asserts that, when police act with an objectively-reasonable good-faith belief that their conduct was lawful, the exclusionary-rule's deterrence rationale is inapplicable and, further, that the rule should "only be invoked where the police conduct was both deliberate, such that deterrence is required, and culpable, such that the need for deterrence outweigh[s] the cost of suppression." Based on his analysis of the left-turn statute and the absence of decisions interpreting that law, the State asserts, Officer Florance had no reason to suspect that his conduct in this case was wrongful. As such, the State argues, we should apply the good-faith exception to the exclusionary rule and reverse the trial court's suppression ruling.

¶ 26    While interesting issues, we decline to address the State's alternative arguments. As defendant notes, none of these arguments was raised by the State below. See *Concord Air, Inc. v. Malarz*, 2015 IL App (2d) 140639, ¶ 24 ("Issues not raised in the trial court generally are forfeited

and may not be raised for the first time on appeal."). We disagree that the State preserved the issues where, in its motion to reconsider, it argued that *Walker* was wrongly decided. Contrary to the State's position, its argument pertaining to *Walker* focused on the statutory-interpretation issue, but even arguing generally that *Walker* was erroneous is a far cry from raising or developing the alternative arguments raised here. In effect, the State is asking us to reverse the trial court based upon arguments not previously raised. Further, the fact that these issues may be subject to *de novo* review does not serve to save these forfeited arguments. Indeed, generally speaking, even *de novo* "review" presumes that there is a decision to "review"; it does not equate to allowing issues to be raised for the first time on appeal or excusing forfeitures.

¶ 27 We acknowledge that forfeiture is a limitation on the parties, not the court (see, *e.g.*, *People v. Gawlak*, 2019 IL 123182, ¶ 26), but we nevertheless choose to honor the forfeiture here. Moreover, as we have declined to address the State's alternative, forfeited arguments, we also deny the State's pending motion to cite additional authority that pertained only to those arguments.

¶ 28                                                III. CONCLUSION

¶ 29 For the reasons stated, the judgment of the circuit court of Lake County is affirmed.

¶ 30 Affirmed.